Dewing & others *v.* Wentworth & Trustee.

SETH DEWING & others *vs.* CHARLES WENTWORTH & Trustee.

Money in the hands of an assignee, under the insolvent law of this commonwealth, cannot be attached by the trustee process, as the property of a creditor of the insolvent debtor, although such money was received by the assignee in compromise of a claim to real estate alleged to have been fraudulently conveyed by the debtor, and was not accounted for by the assignee to the commissioner of insolvency, but was paid over to the creditors *pro rata,* without any order from the commissioner.

THE only question raised in this action was, whether Joshua Seaver was chargeable as trustee of Charles Wentworth, the principal defendant. Said Seaver, in answer to interrogatories by the plaintiffs, said: " I was assignee of the estate of Jesse Bills. Charles Wentworth proved a claim against said Bills's estate, and said claim was allowed. At the time Wentworth proved said claim, there were no funds in my hands belonging to said insolvent's estate; but there was certain real estate, which I alleged had been fraudulently conveyed to other persons by said Bills, before going into insolvency; and for the possession of which, as assignee, I

had commenced suits against such persons. Soon after, the matter was compromised, in the following manner, viz: that Mark Bills, Osgood Brackett, and Charles Thomas, with consent of the insolvent, should convey the real estate to Mr. Joseph D. Gould, in trust for the following purposes: that Gould should hold possession until the 1st August, 1850; and if during that time Bills should pay me, as assignee, fifty per cent. on the whole amount of such claims as might be proved against his estate before the 1st of January, 1848, with interest on the same to February 1st, 1849, then Gould should convey the said property to Bills, or to whom he might direct; and if said Bills did not pay fifty per cent. within said time, then the said Gould, as trustee, should dispose of said property to whomsoever he might be able to realize the most money for it; and the proceeds, after deducting expenses, should be equally distributed among such of the creditors as proved their claims as aforesaid.

In the course of the month of July, 1850, Bills did pay to me, as assignee, fifty per cent. as aforesaid, and I have since that time paid all the persons whose claims were proved as aforesaid, except the claim standing in the name of Charles Wentworth, which claim said Bills declared at the time above alluded to, in July 1850, was not due him, Wentworth; that at the time Wentworth proved his claim, he owed him nothing. In the course of the present year, Mrs. Wentworth has called on me, and requested me to pay to her the whole of the claim, or a part of it, as she was in needy circumstances; and after her request I saw Bills and informed him of it; he urged me not to pay it to her, for the reason that the claim was not due her husband, but belonged to him; and told me he had no doubt if Wentworth was here, he would be perfectly willing I should pay it to him, (Bills.) I therefore declined paying any part to her. Subsequently, Mrs. Wentworth's brother, who lives in Pepperell, called on me, offering me a bond of indemnity if I would pay a part, or the whole, to Mrs. Wentworth, who was then at his house sick, and very much in need of the money, to procure the necessities consequent upon her situation. I informed Bills of that interview

He again told me that at the time Wentworth proved his claim against his estate, he did not owe him a single cent; the balance was the other way; that Wentworth owed him, and he, Bills, repeated to me that in equity Mrs. Wentworth had no more right to any part of that money than any other person. Notwithstanding Mrs. Wentworth's situation, I again objected to paying any portion to her. Wentworth went to California some time in the spring of 1849. I have not seen or heard any thing from him since that time. Bills has represented and showed to me that he let Wentworth have his teams, which were to be an off-set, on payment of Wentworth's claim against him. Mr. Bills is now very sick, and has been sick some nine or ten months, and failing fast. Jesse Bills, in answer to questions put to him by me, relative to Wentworth's claim, said his object in allowing Wentworth's claim to be proved against his estate, was to multiply claims against his estate, and swell the amount as large as possible, and the said Wentworth was to pay him back the dividend."

The trustee further stated that he wished "to make the affidavit of Jesse Bills, which is hereinafter given, a part of his answer; that he believes the statements therein made and sworn to by the said Jesse Bills to be true. The reason why he believes said statements true is this; that from representations made to him by said Bills, that he (Bills) did owe said Wentworth before his going into insolvency; but that he sold his teams to said Wentworth, which amounted to more than Wentworth's claim, and that he (Seaver) knew of Bills having teams sometime before his taking the benefit of the insolvent laws; that he sold them to Wentworth before his going into insolvency; and from other statements made to me by said Bills."

The affidavit above referred to, was as follows: "I, Jesse Bills, of Roxbury, in the county of Norfolk, on oath depose and say, that at the time Charles Wentworth proved the claim against my estate in insolvency, I was not indebted to him, neither was my estate, and he, the said Wentworth, then knew that he had no claim against me on my estate in insolvency, after deducting my claim against him; and the reason

why he proved said claim was the understanding and agree-
ment between him and me that the same should be proved
and allowed for the purpose of swelling the amount of
claims against my estate, and, that the dividend when ordered,
should be refunded to me by said Wentworth ; which has not
been done, on account of the absence of said Wentworth,
since my paying to Joshua Seaver, Esq. assignee of my estate
in insolvency, the fifty cents on a dollar in all claims proved
against my said estate, according to the agreement entered
into between my said assignee and myself; and that I further
depose and say on oath, that I believe said Wentworth, if he
were here, would be willing that Mr. Seaver should pay the
amount or dividend standing against his name to me, accord-
ing to the agreement and understanding entered into at the
time the claim was proved and allowed as aforesaid; and
said Wentworth has been absent in California for upwards of
two years, and I have not been able to obtain an order from
him on Mr. Seaver, authorizing him to pay the money over to
me. I stated the substance of the foregoing statement, to Mr.
Seaver, about the time I paid him the money to be paid to
my creditors, and requested him not to pay said dividend to
any one on account of said Wentworth, except myself. I
make this affidavit that the said Seaver may append it to his
answer in any and all cases where he may be, or has been
summoned as trustee of said Wentworth, on account of
moneys held by him as aforesaid."

The plaintiffs alleged, which was admitted to be true,
that said Bills returned upon his schedule of creditors the
name of Charles Wentworth, as a creditor by note for $500
and interest, and that said Bills made oath that said schedule
was just and true, and also that said alleged trustee had never
made any return to the judge of probate of the money paid
to him, under the agreement with said Joseph D. Gould,
and that no dividend had ever been declared in said case, nor
had the proceedings in insolvency been stayed by any order or
decree of the insolvent court ; and that said Seaver had never
paid over to Wentworth the portion belonging to him.

*J. W. May,* for the plaintiffs. The trustee is chargeable, as

he admits funds in his hands belonging to the principal defendant, which he has never paid over to him. The case of *Colby* v. *Coates*, 6 Cush. 558, does not apply, because here the trustee did not receive the funds as assignee in insolvency, but under a mutual agreement not connected with the proceedings. The commissioner of insolvency never had any power over the funds; no account was ever returned to him; and no dividend declared by him. The funds therefore never were within the custody of the law.

*J. F. Woodside*, for the trustee.

MERRICK, J. Money in the hands of an assignee under the insolvent laws of this commonwealth cannot be attached upon a writ of foreign attachment, as the goods, effects, or credits of a creditor of the insolvent debtor. *Colby* v. *Coates*, 6 Cush. 558. Seaver, the supposed trustee, must therefore be discharged, for it is quite certain from his answers, that at the time of the service upon him of the original writ in this action he had nothing in his possession but money which he held as assignee of the estate of Jesse Bills, to which the defendant Wentworth had any real or pretended right. After his appointment as assignee, Seaver alleged that Bills before he petitioned for the benefit of the act for the relief of insolvent debtors, fraudulently conveyed to other persons certain parcels of his real estate, to recover possession of which he caused several suits to be commenced and prosecuted. He afterwards compromised these suits by agreement with the adverse parties, relinquished all his claim to said real estate, and received in consequence and consideration thereof the money which he states was paid to him by Bills, in the month of July, 1850. He says expressly that he received this money as assignee. He had no other title or claim to it, and was entitled to hold it upon no other ground. If the allegation made by him was true, it was his duty to use all practicable means to gain possession of the real estate fraudulently conveyed for the benefit of the creditors of Bills, and he was authorized to compromise his claim by mutual agreement with the parties against whom it was made. *St.* 1838, *c.* 163, §§ 1, 11. Whatever he received as the result of such compro-

mise belonged to him in his official capacity, and was a part of the estate of the insolvent debtor to be disposed of and appropriated according to the provisions of the statute.

It is unnecessary in disposing of the question before the court, which is simply whether Seaver can be held as the trustee of Wentworth, to notice the alleged fraudulent combination between Bills and Wentworth, by means of which the latter proved an unfounded debt against the former. If the facts stated in the answers upon that subject are true, the share of the estate which would otherwise go to Wentworth, will undoubtedly be directed by some proper proceeding hereafter to be distributed among the real creditors of the insolvent debtor                                      *Trustee discharged.*